AEOLIAN COMPANY, APPELLEE, v. MORRIS W. SHAPIRO, APPELLANT.

Submitted January 25, 1929—Decided October 14, 1929.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and BODINE.

For the appellant, *Otto A. Stiefel.*

For the appellee, *Samuel G. Meisterman.*

PER CURIAM.

The suit is on a written guarantee which reads in full as follows: "In consideration of the extension of credit by the Aeolian Company and shipments of merchandise to the Music Box and George H. Kahn *under a separate agreement,* we (I) Morris W. Shapiro, of 207 Market street, Newark, New Jersey, do hereby guarantee the payment to The Aeolian Company, of 29 West Forty-second street, New York City, or any of its allied or subsidiary companies, to the extent of six hundred dollars, for such indebtedness as may be incurred by the George H. Kahn of Music Box and we agree to settle for the obligations of the said George H. Kahn of Music Box on request.

"This guarantee may be canceled by either party upon sixty (60) days written notice to the other, providing all indebtedness outstanding at the time of cancellation is liquidated by the expiration of the sixty (60) day period.

"Signed—MORRIS W. SHAPIRO,

THE AEOLIAN COMPANY, per

Witness—IRA SCHARF.

Witness—."

The evidence shows that this paper, which is not dated, was executed about the 3d or 4th of February, 1922, or perhaps a day or two earlier. At the same time or a day or two previously the plaintiff had made a written agreement with George H. Kahn named in the guarantee which bears date January 31st, 1922, and bears generally on the matter of sales, purchases, discounts, terms of credit, &c. The plaintiff, regarding the guarantee as a continuing one, kept a running account with Kahn for goods sold over a period of some four years, and finally Kahn became bankrupt owing the plain-

tiff about $780. The defendant was called upon to make good his guarantee to the extent of $600 and refused to do so, claiming in the first place that the guarantee had by its terms applied only to the first $600 of credit which had long since been paid; secondly, that the plaintiff's agent who was present when defendant signed it, assured the defendant that it was only intended for the first $600; thirdly, that the same agent gave him another paper to sign which was represented to be a sixty days' notice of cancellation and that he signed it and gave it back to the agent; and fourthly, that the guarantee had become invalid because of certain extensions of time given by the creditor.

The questions of fact were fully and fairly laid before the jury by the trial judge and the jury evidently resolved them against the defendant. The judge distinctly told the jury that if the agent had made any such representations with regard to the effect of the guarantee or its contents as was claimed by the defendant they should find a verdict for the defendant. The latter testified about these other papers that he had signed an alleged notice of cancellation and sent it forward to the agent for the plaintiff. A man named Lakeman also testified for the plaintiff that he had received the papers purporting to be signed by the defendant, and there was nothing except the guarantee itself and a letter. This letter is printed as an exhibit, and reads "Enclosed please find copy of guarantee as per your request," &c., and is signed by George H. Kahn. It is a legitimate inference that the defendant left everything to Kahn and either that defendant never did sign any such notice of cancellation, or if he did that Kahn suppressed it and sent on the guarantee without the cancellation; all of which is no fault of the plaintiff.

Point 1 for the appellant is that the guarantee cannot be construed as relating to the later sales between September, 1923, and March, 1924. We construe it as a continuing guarantee relating to the written agreement for sales and purchases and effective until properly revoked.

Point 2 is that the earlier sales had all been paid for. This is of course true.

Point 3 is that the guarantor has the right to expect that he will not be held to guarantee any other contract than the one which he guarantees. This may well be conceded.

Point 4 is that the nonsuit should have been granted. We think there was clearly a jury question.

Point 5 is that the court refused to charge that if the plaintiff made any agreement with Kahn for the postponement of Kahn's indebtedness plaintiff cannot recover, &c. We think the charge was properly refused under the case of *Pfeiffer* v. *Crossley, supra.* The word "agreement" in the request is ambiguous, but there was nothing in the evidence to indicate any agreement based on valid consideration or anything more than a voluntary extension of credit.

Point 6 is that the proofs make it plain that between September and March aforesaid plaintiff dealt with Kahn solely on the basis of his own credit without regard to the guarantee and hence there should have been a direction for the defendant. This seems to be based upon the testimony that during the period in question the plaintiff received trade acceptances from Kahn for goods purchased. It seems quite immaterial to us whether the plaintiff did or did not. We construe the guarantee as an absolute guarantee of payment of indebtedness incurred by virtue of the purchase and sales agreement between plaintiff and Kahn, so long as that and the guarantee remained in force; and under the rule laid down in *Pfeiffer* v. *Crossley, supra,* it was immaterial whether plaintiff extended the term of credit or accepted defendant's bills for what was owing.

The judgment will be affirmed.